AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
|---|---|
| v. | ) |
| | ) Case No. 21-6270-SNOW |
| CLEON KIRLEW, | ) |
| | ) |
| | ) |
| Defendant(s) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the dates of 8/1/2021 - 8/3/2021 in the counties of Broward in the Southern District of Florida, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1591(a)(1), (b)(1), (c), and 2. | Sex Trafficking of a Minor |

This criminal complaint is based on these facts:

See attached Affidavit.

☒ Continued on the attached sheet.

*[signature]*
Complainant's signature

Alex G. Loff, Special Agent, FBI
Printed name and title

Sworn to before me telephonically.

DATE: April 28, 2021

*[signature]* Lurana S. Snow
Judge's signature

City and state: Fort Lauderdale, Florida

Lurana S. Snow, United States Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Alex G. Loff, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been so employed since March 2018. Thus, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code. That is, I am an officer of the United States who is empowered by law to conduct investigations of, and make arrests for, violations of federal law, including the offenses enumerated in Title 18, United States Code, Sections 1591, 2422, 2423, 2251, and 2252, et seq.

2. I currently serve as part of the Crimes Against Children group and the FBI Child Exploitation Task Force in the FBI's Miami Field Office. My duties include the investigation of crimes involving the sexual exploitation of minors, including the sex trafficking and commercial trafficking of minors and the possession and production of child pornography. I have received training on the proper investigative techniques for these violations, including the use of surveillance techniques, undercover activities, and the application and execution of arrest and search warrants. I have conducted and assisted in several child exploitation investigations, and have executed search warrants that have led to seizures of child pornography and undercover operations to recover juvenile victims of sex trafficking.

3. This Affidavit is submitted in support of a criminal complaint charging **Cleon Kirlew (hereinafter, "KIRLEW")** with one count of sex trafficking of a minor less than 14 years of age, in violation of Title 18, United States Code, Sections 1591(a)(1), (b)(1), (c), and 2. As explained below, there is probable cause to believe that, from on or about August 1, 2020 through on or about August 3, 2020, in Broward County, in the Southern District of Florida,

KIRLEW, did knowingly, in and affecting interstate and foreign commerce, recruit, entice, harbor, transport, provide, obtain, maintain, solicit, and patronize by any means a person, that is, Minor Victim, knowing, in reckless disregard of the fact, and having had a reasonable opportunity to observe Minor Victim, that Minor Victim had not attained the age of 14 years and would be caused to engage in a commercial sex act.

4.  This Affidavit is based upon my personal knowledge, as well as information learned from other law enforcement agents, investigators, witnesses, and documents. This Affidavit is submitted for the limited purpose of establishing probable cause; as such, it does not include each and every fact known to the government about this investigation.

## PROBABLE CAUSE

### MINOR VICTIM

5.  On or about August 12, 2020, members of the Child Exploitation and Human Trafficking Task Force ("CEHTTF") responded to a hospital located in Tamarac, for the recovery of an 11-year-old female ("Minor Victim"), who was reported missing to law enforcement by her family.

6.  Minor Victim was interviewed on three separate occasions. During her interviews, Minor Victim stated that while she was away from her family, she met an individual by the name of "Nick," who she engaged in sexual activity with. "Nick" told Minor Victim that he could introduce her to "Pumpkin," who was someone that could help Minor Victim make "a lot" of money. "Pumpkin" was later identified by law enforcement as Shanteria Barnes.[1]

---

[1] On January 28, 2021, Barnes was indicted by a federal grand jury sitting in the Southern District of Florida, with two counts of sex trafficking a minor – one of which is the Minor Victim in the instant criminal complaint. See 21-CR-60039-AHS.

2

7.   On or about August 1, 2020, "Nick" took Minor Victim to meet "Moe", later identified by law enforcement as KIRLEW. "Nick" and KIRLEW then took Minor Victim to a Days Inn hotel located in Oakland Park, Florida ("Oakland Days Inn"), whereupon KIRLEW rented a hotel room. KIRLEW told Minor Victim that if she would have sex with him, he would pay for Minor Victim to get her hair and nails done while at the Oakland Days Inn. Minor Victim stated that she complied and had sex with KIRLEW. Minor Victim described KIRLEW as a short, black male with partial dreadlocks.

8.   Minor Victim stated that she stayed at the Oakland Days Inn for three nights with KIRLEW, during which KIRLEW was present during this time. While staying at the Oakland Days Inn with KIRLEW, KIRLEW had sex with Minor Victim approximately four times. Each time, KIRLEW would persuade Minor Victim to have sex with him by asking her about the different gifts that she might want. Minor Victim stated that, in exchange for sex, KIRLEW gave her money, paid for Minor Victim to get her hair and nails done, and also purchased clothes for her.

9.   Minor Victim recalled that on one occasion, when KIRLEW went to get her "FILA" shoes, she asked KIRLEW if she could accompany him to the mall. KIRLEW responded that she was not allowed to go with him to the mall in the event that someone found out how old Minor Victim was.

10.  Minor Victim additionally stated that when she was with KIRLEW, he instructed her to tell people she was 19 years old.

11.  While staying at the Oakland Days Inn, Minor Victim had sex with other men in the hotel room, some of which were arranged by KIRLEW, and received money from some of these men in exchange for the sex. Minor Victim stated that on one occasion, KIRLEW's

3

brother came to the hotel room, and had sex with her in exchange for $40. When KIRLEW's brother left, Minor Victim observed him walk downstairs and meet with "Nick," KIRLEW, and Barnes, who were waiting for him.

12. Minor Victim stated that the second night at the Oakland days Inn, "Nick" and KIRLEW threw a party in the hotel room. Minor Victim stated that, during the party, she was watching "Jessie" on the Disney Channel and a male friend of "Nick" asked Minor Victim how old she was. Minor Victim said she was 12 years old, but then said she was 17 years old. Minor Victim stated that KIRLEW left the hotel room and said to her, "by the time I get back, you better be sucking his dick."

13. Minor Victim advised that KIRLEW always carried a black semi-automatic firearm on him. Minor Victim stated that because of the firearm, she often felt scared to say "no" to KIRLEW.

14. Minor Victim stated that after KIRLEW had sex with her the first time, KIRLEW called Barnes and told her to come to the Oakland Days Inn. When Barnes arrived at the Oakland Days Inn, she was accompanied by two girls, later identified as Minor 2 and Minor 3. Minor Victim stated that Minor 2 and Minor 3 did her hair, which KIRLEW paid Minor 3 $120 for.

15. Minor Victim stated that Barnes introduced herself to Minor Victim as "Pumpkin" and asked Minor Victim to dance for her to see if Minor Victim knew how to. When Minor Victim was able to dance and do a split, Barnes was impressed and told Minor Victim that she would pay her $60 to strip at Barnes' aunt's birthday. Barnes also told Minor Victim, "oh bitch, I got money cause I fuck," and showed Minor Victim videos and pictures of people with wads of cash in order to show Minor Victim how much money she could make

4

engaging in commercial sex acts.

16. Minor Victim stated that Barnes would arrange "dates" for both herself and Minor Victim to engage in commercial sex. Barnes had the "dates" come to Barnes' house so that she could discuss the terms of the "date." On one occasion, Barnes instructed the men which hotel they would be meeting at, told them whether Minor Victim would be stripping for them, and how much it would cost.

17. When the men would arrive at Barnes' house for the "date," Barnes would drive Minor Victim in a two-door silver vehicle, with the men following behind in their own vehicle, to the nearby Travelodge Hotel located in Pompano Beach ("Travelodge") for the "date." The men would be the one to rent the hotel rooms. At times, both Barnes and Minor Victim would be in separate rooms on "dates," while other times, Barnes and Minor Victim would share a room during the "dates."

18. On these "dates," Barnes told Minor Victim not to accept anything less than $40 to engage in sexual activities. Minor Victim stated that for $30, she would strip for the "dates," and starting at $40, she would have sex with the men.

19. Minor Victim stated that she was with Barnes, engaging in sexual acts for money, for approximately four days and made approximately $150 per day. During the first interview, Minor Victim advised that on one occasion, she had approximately 10 "dates" in one day, and during the course of her stay at the hotels with Barnes, she engaged in approximately 15-17 "dates." During the second interview, Minor Victim stated that she engaged in approximately 14 "dates" at the direction and arrangement of Barnes.

20. Minor Victim stated that she would spend a lot of time with "Nick," KIRLEW, and Barnes. Minor Victim advised that when she and Barnes were having "dates" for

5

commercial sex, "Nick" and KIRLEW would be waiting for Barnes and Minor Victim to finish the "dates," at which point they would all meet up.

MINOR 2

21. Contact was made with a 15-year-old female ("Minor 2") during two separate interviews on or about August 20, 2020, and on or about December 1, 2020. During the interviews with Minor 2, she stated she met Barnes while Minor 2 was walking to a nearby corner store from her group home in Pompano Beach.

22. On one occasion, Barnes asked Minor 2, and Minor 2's 17-year-old friend ("Minor 3") from the same group home, if they wanted to make $150 doing Minor Victim's hair at a room in the Oakland Days Inn. Minor 2 was surprised because she knew the Oakland Days Inn was associated with prostitution. Barnes drove Minor 2 and Minor 3 to the Oakland Days Inn in Barnes' two-door white Toyota.

23. While driving to the Oakland Days Inn, Barnes told Minor 2 and Minor 3 not to braid Minor Victim's hair too long because "she's not old enough for that." Minor 2 understood that to mean that the girl is not "grown" and would not look good with long braids. When they got into the room, Minor 2 and Minor 3 began to braid Minor Victim's hair. Minor 2 did not know Minor Victim's name, but Minor Victim told Minor 2 that she was 17 years old. Minor 2 identified a photograph of Minor Victim, as the girl whose hair they braided on that day.

24. Minor 2 stated that while in the Oakland Days Inn hotel room, KIRLEW, who was called "Moe," came into the room with another male. Minor 2 recalled that KIRLEW was very talkative so she turned the volume louder on the television. KIRLEW tried to engage Minor 3 with a fist-bump, but Minor 3 was unable to because she was too busy braiding Minor Victim's

hair. KIRLEW then tried to hug Minor 2, at which point Minor 2 told KIRLEW, "No," and that she wanted to social distance due to the Coronavirus.

25. KIRLEW said he was going to give Minor 2 and Minor 3 each $100, and started pulling money out of his pockets, but then informed Minor 2 and Minor 3 that since they were being rude to him, he was no longer going to give them the money.

26. Barnes told Minor 2 and Minor 3 that KIRLEW was paying for Minor Victim's hair. When Minor 2 and Minor 3 asked Minor Victim why KIRLEW was paying for her hair, Minor Victim said KIRLEW was a close friend. Minor 2 advised she could tell Minor Victim was lying.

27. Minor 2 and Minor 3 were uncomfortable with KIRLEW and the other male in the hotel room, so they left before Minor Victim's hair was finished.

28. Minor 2 described KIRLEW as a short, black male with partial dreadlocks. This description is consistent with how Minor Victim and Minor 3 described KIRLEW.

MINOR 3

29. Contact was made with a 17-year-old female ("Minor 3") during two separate interviews on or about September 10, 2020, and on or about March 12, 2021. During the interviews, Minor 3 stated that she met Barnes through Minor 2, who went to live with Barnes while she was a juvenile runaway.

30. Minor 3 stated that Barnes engaged in sex acts for money, which she called "licks." Barnes told Minor 3 that she gave Minor 2, "like 3 of my licks." Minor 2 showed Minor 3 various cellular phone apps that Minor 2 would use to engage in "dates" for herself and Barnes. On one occasion, while Minor 2 and Minor 3 were in the car with Barnes, Minor 2 told Minor 3

that she needed money to give to Barnes to pay rent. To do so, Minor 2 called a "lick" who picked her up from Barnes's residence.

31.    Minor 3 stated that she met KIRLEW, who called himself "Moe," at the Oakland Days Inn on or about August 1, 2020, when Minor 2 and Minor 3 were braiding Minor Victim's hair. At some point, Minor 3 left with Barnes to retrieve more hair for Minor Victim. While they were temporarily away from the Oakland Days Inn, Barnes told Minor 3 that KIRLEW was "trying to talk to [Minor Victim]" and that he paid Minor Victim $150. When Minor 3 asked why KIRLEW gave Minor Victim $150, Barnes replied, "you know, stop playing," which Minor 3 understood as payment for sex.

32.    Minor 3 left some of her items at the Oakland Days Inn and Barnes would not return Minor 3's items until her and Minor 2 came back to finish Minor Victim's hair. When they arrived back at the Oakland Days Inn the following day, KIRLEW gave money to Minor 3 for braiding Minor Victim's hair. Minor 3 also witnessed KIRLEW give money to Minor Victim.

33.    On another occasion, Minor 3 recalled that KIRLEW rented a hotel room on or about August 16, 2020, at Ocean Beach Palace, located at 4041 North Ocean Boulevard, Fort Lauderdale, Florida ("Ocean Beach Palace"), for Minor 3, Barnes, and another male.

34.    During this time at the Ocean Beach Palace, Barnes tried to kiss Minor 3. Minor 3 stated that Barnes was supposed to engage in commercial sex with the other male, and Minor 3 was supposed to engage in commercial sex with KIRLEW. Ultimately, Minor 3 refused Barnes' advance and left the Ocean Beach Palace.

35.    Following the incident at Ocean Beach Palace, KIRLEW texted Minor 3 at various times, and also messaged her on Instagram.

36. Minor 3 stated that KIRLEW and Barnes used to be in a relationship. Minor 3 overheard telephone conversations between KIRLEW and Barnes, in which KIRLEW would tell Barnes to "find some girls" for him. Minor 3 heard Barnes say to KIRLEW, "I'm putting you on plays, why aren't you giving me money?"

37. Minor 3 described KIRLEW as a short, black male with partial dreadlocks. This description is consistent with how Minor Victim and Minor 2 described KIRLEW. Minor 3 further identified a photograph of KIRLEW as the individual she knew as "Moe".

38. Minor 3 provided law enforcement with KIRLEW's telephone number, and also showed law enforcement a text message conversation between KIRLEW and Minor 3 which read as follows:

| KIRLEW | What's up lil baby | August 18, 2020 (2:35 p.m.) |
| KIRLEW | ????? | August 18, 2020 (3:51 p.m.) |

| KIRLEW | What's up | August 21, 2020 (9:55 p.m.) |
| Minor 3 | Nun | August 21, 2020 (11:24 p.m.) |
| KIRLEW | I want you what's up<br>Where u at um come get u | August 21, 2020 (11:24 p.m.) |

BARNES' ARREST

39. On or about December 18, 2020, Barnes was arrested and charged by criminal complaint with two counts of sex trafficking of a minor in violation of 18 USC 1591(a)(1), (b)(1), and (b)(2), arising from this investigation.

40. During a post-*Miranda* interview with Barnes, Barnes stated she met Minor Victim at the Oakland Days Inn. Barnes advised that her "ex-boyfriend," who she identified as "Moe," rented a hotel room at the Oakland Days Inn, and called Barnes asking her to come to the Oakland Days Inn in order to "help with a girl's hair." When Barnes arrived, Minor Victim was

9

naked. Barnes stated that Minor Victim had sex with "Moe" and "all his friends." Barnes informed law enforcement of "Moe's" real first name, Cleon, and provided his Instagram username as "uglyclick." Barnes stated that she believed Minor Victim was either 12 or 13 years old.

41. During the interview, Barnes also provided law enforcement with consent to search her cellular phone. A search revealed one particular message, sent from Barnes to Minor 3 on or about August 15, 2020, stating, "7543179180 call him now mole."[2] Further, Barnes had this same number saved in her cellular phone under the contact, "Moe".

ADDITIONAL INVESTIGATIVE STEPS

42. A subpoena was sent to Facebook for the Instagram profile with username "uglyclick." Subpoena returns showed an email associated with the account as "c.kirlew87@gmail.com," which is consistent with KIRLEW's first initial, last name, and year of birth. The returns also verified the phone number associated with the account as KIRLEW's number.

43. Law enforcement obtained hotel records from the Oakland Days Inn which confirmed that KIRLEW rented a hotel room at the Oakland Days Inn from July 31, 2020 through August 3, 2020. Additionally, the Oakland Days Inn provided a copy of KIRLEW's Driver License which he used to rent the hotel room.

44. Subpoenaed records from Barnes' cell phone service provider revealed approximately 81 communications between Barnes and KIRLEW during the time of the hotel rental at the Oakland Days Inn.

---

[2] Law enforcement confirmed this number belongs to KIRLEW. Law enforcement believes that "mole" is a typo and that Barnes was referring to "Moe."

45. On or about December 31, 2021, law enforcement went to KIRLEW's residence in Fort Lauderdale, Florida, in attempt to interview KIRLEW. Upon arriving at his residence, KIRLEW was seen walking away from the residence. Law enforcement called out, "Cleon," in an attempt to get KIRLEW's attention. KIRLEW turned and looked at the law enforcement officers, who were dressed in identifiable police gear. KIRLEW then ran to a parked vehicle across the street, got into the passenger side of the vehicle, and the vehicle fled the scene from law enforcement at a high rate of speed.

46. On or about January 12, 2021, a federal search warrant was obtained for historical cell-site information associated with KIRLEW's phone number (see 21-MJ-6011-HUNT). A preliminary cellular analysis of the cell-site information confirmed that the phone number belonging to KIRLEW utilized the cellular towers nearest the Oakland Days Inn on or around the time KIRLEW rented the hotel room.

## CONCLUSION

47. Based on the forgoing, I respectfully submit that there is probable cause to support a criminal complaint charging **Cleon Kirlew** ("KIRLEW") with one count of sex trafficking of a minor less than 14 years of age, in violation of Title 18, United States Code, Sections 1591(a)(1), (b)(1), (c), and 2.

Alex G. Loff, Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me telephonically this 28th day of April, 2021.

LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE